[Docket No. 6]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| W.M.T.,[1]<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil No. 25-12105-RMB<br><br>**OPINION** |

**APPEARANCES**:

Taylor A. Vick
Jacobs Schwalbe & Petruzzelli, P.C.
Ten Melrose Avenue, Suite 340
Cherry Hill, N.J. 08003

*On behalf of Plaintiff*

Shawn Cheree Carver
Social Security Administration
Law & Policy, Program Litigation 3
6401 Security Boulevard
Baltimore, MD 21235

Taryn F. Jasner
Social Security Administration
Law & Policy, Program Litigation 3
6401 Security Boulevard
Baltimore, MD 21235

*On behalf of Defendant*

[1] Due to the significant privacy concerns in Social Security cases, plaintiffs are identified and referenced solely by initials in opinions issued by the United States District Court for the District of New Jersey. *See* D.N.J. Standing Order 2021-10.

[Docket No. 6]

**RENÉE MARIE BUMB, Chief United States District Judge**:

Plaintiff W.M.T. ("Plaintiff") asks this Court to reverse the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "SSA") denying continued Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the reasons discussed below, the Court **AFFIRMS** the decision of the Administrative Law Judge ("ALJ") finding Plaintiff is no longer disabled within the meaning of the Act and retains some residual functional capacity ("RFC").

## I. PROCEDURAL HISTORY

On February 13, 2020, Plaintiff filed a disability application under Title II of the Act. [R. 276–79.] Plaintiff alleged an onset date of disability beginning October 1, 2019, based on complications from major foot and ankle surgery. [*Id.* at 276.] The Commissioner found Plaintiff was disabled and granted benefits on May 24, 2020, [*id.* at 102], finding Plaintiff met the criteria for an impairment under 20 C.F.R. pt. 404, subpt. P, app. 1 (hereinafter the "Listed Conditions" and a condition therein a "Listing"). [*Id.* at 100.] Plaintiff met the criteria for Listing 1.03 (Reconstructive Surgery of a Weight Bearing Joint) which requires a person be unable to "effectively ambulate" for a period of 12 months.

In May 2021, Plaintiff's benefits underwent a statutory period review. [*Id.* at 120; *see also id.* at 102 (noting that review date in the May 18, 2020 disability determination)]. The Commissioner terminated Plaintiff's benefits on October 20,

[Docket No. 6]

2021, [*id.* at 117], citing medical improvement—he could walk without an assistive device again, [*id.* at 106–107]. After exhausting the CDR review and reconsideration process, [*see id.* at 128–148], all of which proved unsuccessful, Plaintiff filed a timely written request for a hearing before an ALJ on August 10, 2022. [*Id.* at 193.]

The telephonic hearing took place on March 8, 2024, where Plaintiff was represented by an attorney and testified before the ALJ. [*Id.* at 59, 62–87.] The ALJ also heard testimony from vocational expert ("VE") James Soldner. [*Id.* at 87–93.] The ALJ ruled against Plaintiff on July 11, 2024, finding that he had improved from his comparison point decision ("CPD")—the May 18, 2020 disability determination—such that he could seek employment in the national economy. [*Id.* at 35, 41–42.] On May 16, 2025, the Appeals Council denied Plaintiff's request for review, and the ALJ's denial became the Commissioner's final decision. [*Id.* at 1–4.]

## II. STANDARD OF REVIEW

### A. The SSA's Periodic Review of Entitlement to Disability Benefits.

After the SSA determines that a claimant is under a disability, it is required to periodically review whether the DIB recipient remains entitled to such benefits. 42 U.S.C. § 423(f)(1)(A); 20 C.F.R. § 404.1594(a). When reviewing a claimant's entitlement to continue receiving DIB, the SSA must determine whether there has been any "medical improvement" in the claimant's impairments such that the claimant is capable of working. 20 C.F.R. § 404.1594(a). "Medical improvement" is defined as "any decrease in the medical severity" of the claimant's impairments "at

the time of the most recent favorable medical decision" and is based on "improvement in the symptoms, signs, and/or laboratory findings associated with" the claimant's impairments. *Id.* § 404.1594(b)(1). The ALJ compares the claimant's present condition against the impairment's medical severity found at the time of the CPD. *Id.* §§ 404.1594(b)(7), (c)(3)(i); *see also* § 404.1594(c)(1).

The SSA may terminate a claimant's disability benefits if it concludes the claimant is no longer experiencing the physical or mental impairment that rendered him disabled, and the claimant is now capable of engaging in substantial gainful activity. *Id.* § 404.1594(a) and (b)(3); 42 U.S.C. § 423(f)(1). The SSA considers a claimant's ability to engage in substantial gainful activity by using the "new symptoms, signs[,] and laboratory findings to make an objective assessment of [the claimant's] functional capacity to do basic work activities or residual functional capacity [("RFC")] and [] will consider [the claimant's] vocational factors." 20 C.F.R. § 404.1594(b)(5) (citing *id.* §§ 404.1545 through 404.1569) (defined term added).

The Commissioner has promulgated the following set of eight evaluative questions when considering whether a claimant remains disabled:

> (1) Are you engaging in substantial gainful activity? If you are . . . we will find your disability to have ended[.]
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of [a Listed Condition]? If you do, your disability will be found to continue.
>
> (3) If you do not, has there been medical improvement as defined in [20 C.F.R. § 404.1594(b)(1)]? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no

decrease in medical severity, there has been no medical improvement. (See step (5).)

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with [20 C.F.R. § 404.1594(b)(1) through (b)(4)]; *i.e.*, whether [] there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in [20 C.F.R. § 404.1594(d) and (e)] apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

> (8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment made under paragraph (f)(7) of this section and your age, education, and past work experience . . . If you can, we will find that your disability has ended. If you cannot, we will find that your disability continues.

20 C.F.R. § 404.1594(f)(1)–(8).

If the claimant introduces evidence his condition remained the same as it was in the earlier CPD, the burden shifts to the SSA to present evidence that there has been an improvement in the claimant's medical condition enabling substantial gainful activity consistent with the individual's RFC. *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 308 (3d Cir. 2012) (citations omitted). In other words, a claimant enjoys a presumption of continuing disability by introducing evidence that the disabling condition continues. *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237–38 (3d Cir. 1983). The burden then shifts to the SSA to establish that there has been sufficient medical improvement in the claimant's condition to allow the claimant to work. *Keegan v. Heckler*, 744 F.2d 972, 975 (3d Cir. 1984) (citing *Kuzmin*, 714 F.2d at 1237).

**B. The Substantial Evidence Standard**

The Act grants federal courts limited power to review decisions of the Commissioner denying disability applications. 42 U.S.C. § 405(g). Although courts fully review all legal issues decided by the Commissioner, *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000), the Act requires courts to uphold the Commissioner's factual decisions if they are supported by "substantial evidence," *see* 42 U.S.C. § 405(g); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). This evidentiary threshold is "not high" and

"means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks omitted) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard is deferential, and a court cannot set aside the Commissioner's decision merely because "acting *de novo* [it] might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986). Indeed, courts cannot "weigh the evidence or substitute [their own] conclusions for those of the [Commissioner.]" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation and internal quotation marks omitted).

Nevertheless, the deferential substantial evidence inquiry does not require a court to rubberstamp the Commissioner's decision. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (explaining that substantial evidence standard is not "a talismanic or self-executing formula for adjudication" and that it requires "qualitative exercise"). Accordingly, when reviewing the Commissioner's decision, a court must "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (citation and internal quotation marks omitted). Nor does the deferential standard apply to questions of law that the Court reviews *de novo*. *Karlson v. Colvin*, 17 F. Supp. 3d 432, 436 (D.N.J. 2014) (citing *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000)).

Where, as here, the Appeals Council denies a claimant's request for review of an ALJ's decision, the "ALJ's decision is the Commissioner's final decision."

*Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The ALJ's determination must have enough information to "permit meaningful judicial review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The ALJ must explain the evidence she considered that "supports the result" and provide "some indication of the evidence [she] rejected." *Smith v. Comm'r of Soc. Sec.*, 178 F. App'x 106, 111 (3d Cir. 2006) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Otherwise, a reviewing court "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. A court will set aside an ALJ's decision if the judge failed to consider the entire record or resolve an evidentiary conflict. *Fargnoli v. Massanari*, 247 F.3d 34, 41–42 (3d Cir. 2001).

## III. FACTUAL BACKGROUND

### A. Plaintiff's Age, Education, and Work History

The Court recounts only the facts necessary to adjudicate this appeal. Plaintiff submitted his application at age forty-one, [*see* R. 18 (DOB), 192 (date of filing)], and by the time of the ALJ's decision, Plaintiff was forty-three, [*see id.* at 1 (date of ALJ denial)]. Plaintiff completed "some college," [*id.* at 63], and he worked as an automotive mechanic for around twenty years, [*id.* at 64–65].

### B. The ALJ's Decision

Before proceeding to the eight-step medical improvement analysis promulgated by the SSA, the ALJ made two necessary preliminary findings: She identified the May 18, 2020 disability determination as Plaintiff's CPD; and she found when SSA issued

the CPD, Plaintiff's diabetes mellitus and diabetic neuropathy coupled with complications from foot and ankle surgery met the criteria for Listed Condition 1.03. [R. 40.] The ALJ made the following findings at each step of the analysis:

1) Plaintiff has not engaged in substantial employment since SSA issued the CPD. [*Id.*]

2) Plaintiff's current impairments differed from the CPD—namely, his conditions now excluded the complications from his foot and ankle surgery and included amputation of his right big toe and a cervical discectomy (removal of a damaged or herniated intervertebral disc). [*Id.*] His diabetes mellitus and diabetic neuropathy remained. [*Id.*] However, the ALJ found that Plaintiff's new combination of impairments did not meet the criteria for ***any*** Listed Condition. [*Id.* at 40–41.] In other words, at the time of his appeal, Plaintiff did not suffer from any ***new*** impairments or combination of impairments that independently qualified as a disability.

3) Plaintiff's Listed Condition in the CPD experienced "medical improvement." [*Id.* 41–42.]

4) Plaintiff's medical improvement affected his ability to work. [R. 42.] Plaintiff's RFC increased because he could now perform sedentary work that he previously could not. [*Id.*] Plaintiff challenges this conclusion. Because Plaintiff's medical improvement affected his ability to work, the analysis skips step five.

6) Plaintiff's combination of ***current*** conditions is severe. [*Id.* at 42.]

7) Plaintiff's RFC is sedentary work, with the ability to sit or stand or walk for up to two hours; and sit for six hours in an eight-hour workday.[2] [*Id.* at 44.]

8) Plaintiff cannot perform past relevant work. [*Id.* at 48.]

[2] Plaintiff's RFC also included obvious exclusions for a person limited to sedentary work such as never climbing a rope or ladder. [R. 44.] As those obvious exclusions are not at issue, they are not discussed further.

Although he does not say it in as many words, Plaintiff challenges all but the first, sixth, and eighth findings, *i.e.*, all the ALJ's adverse determinations.

## IV. DISCUSSION

All the ALJ's findings are supported by substantial evidence. The ALJ here wrote a thorough, well-reasoned opinion supported by the record. She explained the evidence she relied upon and why. Plaintiff's arguments amount to generalized grievances that the ALJ credited the independent consultative examination performed by Dr. Juan Carlos Cornejo, D.O.—and Plaintiff's testimony that corroborated it—instead of Plaintiff's treating physicians and his testimony that his medical records did not support. Neither argument demonstrates the ALJ lacked substantial evidence to reach her conclusions, particularly given the abrogation of the "treating physician rule." *Stam v. Kijakazi*, 577 F. Supp. 3d 358, 373–74 (M.D. Pa. 2021); *Jospeh P. v. Comm'r of Soc. Sec.*, 2023 WL 1929945, at *4 (D.N.J. Feb. 10, 2023) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017)) ("The revised regulations have eliminated deference to the claimant's treating doctor and explain that ALJs will not assign specific evidentiary weight to any medical opinion.").

### A. Step 2: The ALJ's conclusion Plaintiff does not currently meet *any* Listed Condition is supported by substantial evidence.

At step 2, the ALJ evaluated five Listed Conditions against Plaintiff's alleged impairments: (1) 1.15 (Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root); (2) 1.17 (Reconstructive Surgery of Weight Bearing Joints); (3) 1.18

(Abnormality of a Major Joint in any Extremity); (4) 9.00 (Endocrine Conditions Generally); and (5) 11.14 (Peripheral Neuropathy). She determined Plaintiff's combination of current conditions did not meet the criteria for any Listed Condition, and all five determinations are supported by substantial evidence.

To qualify for Listing 1.15, a Plaintiff must provide "[f]indings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.15(C). The ALJ did not find any such imaging in the record. [R. 40.] Plaintiff does not argue he provided that imaging. Although the ALJ found Listing 1.15 did not apply for other reasons as well, this basis alone precludes the ALJ from making any finding Plaintiff met Listing 1.15's criteria.

Turning to Listing 1.17—which replaced Listing 1.03 for impairments relating to reconstructive surgery of weight bearing joints—the ALJ found Plaintiff can walk without the use of bilateral canes, a walker, or other assistive device listed therein. [*Id.* at 43; *see also id.* at 41 (noting Plaintiff did not need a walker or other assistive device in performing step 2).] Referencing her later analysis of Plaintiff's RFC, the ALJ supported her holding with Plaintiff's testimony he can walk without an assistive device. [*Id.* at 45; *see also id.* at 10 (Plaintiff making similar statement to doctors—albeit long after the administrative hearing).] That is substantial evidence: A reasonable person could and would credit Plaintiff's statements against his own interest at the hearing. The only conflicting evidence discovered in the record is a single, passing reference to an electric scooter when Plaintiff went to a nephrologist appointment. [*Id.* at 754.] The ALJ was free to disregard that evidence without further explanation

anywhere else in Plaintiff's medical records and particularly in the face of testimony ***at a later date*** that he can walk up to twenty minutes at a time before taking a break. [*Id.* at 68.]

The ALJ found Plaintiff did not qualify for Listing 1.18 because he did not satisfy criterion B for largely the same reasons. Listing 1.18(B) requires "Abnormal motion, instability, or immobility of the affected joint(s)." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.18(B); [R. 41]. The ALJ credited Dr. Cornejo's exam where Plaintiff's "gait was normal, without use of an ambulation aide, and he was able to heel walk, toe walk, and squat without difficulty," to find he was not unstable or immobile under the regulations. Her conclusion was further bolstered by the same facts underpinning her Listing 1.17 analysis above—Plaintiff's omission of documented need for an assistive device in his testimony and medical records, as well as his testimony he could walk for twenty minutes at a time. That is evidence from which a reasonable person could conclude Plaintiff does not suffer abnormal motion, instability, or immobility.

Listing 11.14 (Peripheral neuropathy) is "characterized by disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities," ***or*** marked limited in memory, communication, and other cognitive skills. 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.14. The ALJ—again crediting Dr. Cornejo's evaluative examination—found Plaintiff could sit, stand, and squat without issue. [R. 41.] She further credited Plaintiff's ***treating physician*** to discount any limitations to Plaintiff's mental acuity. [*Id.* at 43 ("His mental status exam showed full affect, good

insight and judgment, clear speech, and no cognitive impairment, with assessment of adjustment disorder.").] And the ALJ supported that conclusion with records from Plaintiff's other providers "showing normal mood and affect." [*Id.*] Once again, the ALJ premised her conclusion on evidence a person could use to support her finding.

Listing 9.00 (Endocrine Disorders) directs an ALJ to evaluate disorders like diabetes mellitus for the symptoms they manifest as opposed to the disorder itself. 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 9.00(B) (evaluation of symptoms), 9.00(B)(5) (listing diabetes as an endocrine disorder under § 9.00). The ALJ considered all relevant Listed Conditions based on Plaintiff's impairments, including Listings 1.15, 1.17, 1.18, and 11.14 discussed above. [R. 40–41.] Plaintiff never provides any other Listed Condition he believes he meets that the ALJ should have considered. Indeed, Plaintiff does not mention any of the listed conditions in his brief other than the Listing 1.03 ***which SSA removed by amendment***. [*See generally* Docket No. 6.] Plaintiff's failure to identify any Listed Condition he may meet amounts to an unspoken invitation to play detective and ***shoulder his burden of proof*** for him. *See Jemison v. Saul*, 2020 WL 7258515, at *12 (E.D. Pa. Dec. 10, 2020) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)) ("Plaintiff bears the burden of showing that she meets a listing[.]"). The Court respectfully declines.

Because Plaintiff no longer satisfies the criteria for ***any*** Listed Condition, the ALJ next found that although not totally debilitating, Plaintiff's conditions are "severe" and disqualify him from working in his previous profession as a mechanic.

The ALJ next assessed his RFC, and whether there are jobs in the national economy that he ***can*** perform.

### B. Step 3: The ALJ's finding Plaintiff experienced medical improvement and is no longer disabled is supported by substantial evidence.

Plaintiff originally qualified for DIB under Listing 1.03. In 2020, the SSA amended the Listed Conditions and replaced Listing 1.03 with Listing 1.17. *Groff v. Kijakazi*, 2022 WL 17083647, at *4 (E.D. Pa. Nov. 17, 2022); *see also Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 Fed. Reg. 78,164 (final rule, Dec. 3, 2020); [R. 41 (ALJ acknowledging SSA's updated Listed Conditions)]. However, when assessing medical improvement, ALJs should refer to the original qualifying criteria in the CPD—not any new or replacement criteria. 20 C.F.R. § 404.1594(c)(3)(i) ("If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals ***the same listing section used to make our most recent favorable decision*** . . .) (emphasis added).

Listing 1.03 required reconstructive surgery of a major weight bearing joint, with an inability to "ambulate effectively" that has or is expected to last a year. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.03 (West historical statutes, effective Sept. 24 to Nov. 25, 2019). In his CPD, Plaintiff had a documented post-surgical need for a knee scooter that occupied both his hands—necessarily meaning he could not "effectively ambulate." [*See, e.g.*, R. 606, 639.] The ALJ found as time passed, Plaintiff improved, and that documented need disappeared. [*Id.* at 46.] Crediting Dr. Cornejo's examination, she held "Although his diabetes mellitus and diabetic neuropathy with

[Docket No. 6]

foot complications continues, his recent consultative exam showed he was walking with a normal gait. Following amputation of his right great toe, his swelling and pain decreased significantly using the ankle/foot orthotics." [*Id.*] That alone is substantial evidence that the ALJ decided to credit, but it is—as it was when determining Listing 1.17 would not apply to Plaintiff—again bolstered by Plaintiff's own testimony that with his orthotics, he can walk up to twenty minutes unassisted. [*Id.* at 68.]

Even assuming ***arguendo*** the newer standard found in Listing 1.17 applied, Plaintiff's challenge would fail. Section 1.17 has a more rigid, non-subjective evaluation: Whether the plaintiff requires the use of an assistive device that occupies both hands (*e.g.*, a walker, bilateral canes, or a scooter requiring both hands to drive.) 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.17(C). As discussed earlier, Plaintiff did not provide any evidence to the ALJ he requires such an assistive device, and he thus does not qualify as disabled under Listing 1.17.

Plaintiff argues that since his CPD, he had his right big toe amputated, underwent a discectomy, continues to experience problems with his feet, and suffers from increased A1C levels indicating worsening symptoms from diabetes. [Docket No. 6 at 13.] Plaintiff's arguments misapprehend the step 3 analysis. The ALJ must determine if there was medical improvement ***in the specific condition*** that Plaintiff originally experienced to qualify for DIB, *i.e.*, Listing 1.03. Plaintiff's arguments, even if true, appeal to common sense—not the standards promulgated by the SSA through notice and comment rulemaking.

[Docket No. 6]

As a result, Plaintiff experienced medical improvement because he no longer qualified as disabled ***at all*** under the criteria from his CPD, and that determination by the ALJ is supported by substantial evidence. Plaintiff's challenge to step 3 fails.

**C. Step 4: It is axiomatic that if a claimant goes from disabled to not disabled, it affects their ability to work.**

Plaintiff conflates steps in the rigid, sequential process the ALJ undertakes in performing a periodic review of entitlement. He attempts to holistically litigate RFC at step 4. [Docket No. 6 at 15 ("It is unclear to subsequent reviewers how the ALJ found work capability despite the additional surgeries Plaintiff has undergone to his foot and neck since October 20, 2021."). That analysis by the ALJ and critique on appeal by Plaintiff are reserved for step 7—not step 4. Step 4 asks a far simpler question: Does medical improvement alter Plaintiff's RFC ***at all***?

Here it does. If SSA finds a claimant like Plaintiff no longer meets the criteria for his disability (*i.e.*, listed condition), then he is no longer disabled. If a plaintiff is no longer disabled, they ***may*** be able to work—which is different from being ***unable*** to work. And that makes sense: Not all disabilities are permanent *ergo* neither are all disability determinations. Plaintiff cites to the very Social Security publication connecting these dots. [*Id.* ("POMS DI 28015.050 Consideration of Prior Listing also provides the clarification that when the impairment(s) no longer meets or medically equals the CPD listing . . . then, [the ALJ should] find medical improvement (MI) related to the ability to work.").]

[Docket No. 6]

Here the ALJ found—based on substantial evidence—that Plaintiff no longer qualifies for Listed Condition 1.03 found in his CPD. [R. 41–42.] And she reasonably found, based on the SSA's publications and regulations, that change ***affected*** Plaintiff's RFC and ability to work. Because Plaintiff's own citations and black letter social security law confirm that conclusion, *see* 20 C.F.R. § 404.1594(c)(3)(i) (codification of Plaintiff's cited SSA publication's proposition), the Court finds Plaintiff's challenge to step 4 fails ***as a matter of law***.

**D. Step 7: The ALJ's residual functional capacity ("RFC") analysis is supported by substantial evidence.**[3]

An RFC analysis is a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96–8p. Here, the ALJ found Plaintiff's RFC is work at the sedentary exertional level, standing and/or walking for up to two hours a day, sitting for six hours in the eight-hour workday, and includes needed breaks to stand to alleviate discomfort from sitting for too long in one position. [R. 44–45.] Notably, this RFC reflects a ***lower exertional level*** than other SSA examiners found during Plaintiff's CDR process. [*Id.* at 48.]

At the outset, the Court notes most of Plaintiff's complaints about the ALJ's RFC analysis stem from her (1) rejection of his testimony and (2) not crediting his

[3] The Court also notes Plaintiff frequently cites to the evaluative reports of PJO Health Services from December 2024 to February 2025, [*id.* at 8–23], as evidence the ALJ did not justify her conclusions with substantial evidence. These reports were prepared after the hearing in front of the ALJ, and she could not consider them. Neither will the Court in evaluating whether the ALJ's conclusions are supported by substantial evidence.

treating physician's diagnoses of certain conditions that prevent him from working. [Docket No. 6 at 23–24 (testimony), 31–35 (treating physicians).] The ALJ is free to discredit Plaintiff's testimony if it is not supported by medical records, *see, e.g.*, *Tiffany S.W. v. Bisignano*, 2026 WL 84340, at *8 (D.N.J. Jan. 12, 2026), which she did here, [R. 46 ("[H]owever, the claimant's statements concerning . . . these symptoms are not entirely consistent with the objective medical and other evidence[.] Accordingly, these statements have been found to affect the claimant's ability to work only to the extent [they are] consistent with the objective medical and other evidence.")]. As to the documented diagnoses and opinions of Plaintiff's treating physicians, the ALJ considered them and found they were not credible "because they are not an opinion of a function-by-function assessment of the claimant," but instead categorically claimed he could not work. [*Id.* at 48.] Under SSA's revised framework, the ALJ is free to give the opinions of Plaintiff's treating physicians less weight than neutral evaluating physicians, precisely as she did. *Joseph P.*, 2023 WL 1929945, at *4.

Turning to his more specific complaints, Plaintiff first alleges the ALJ did not consider the numbness he experiences in his neck from his discectomy and his hands from his diabetes when computing his RFC. [Docket No. 6 at 23–24.] That is inaccurate. The ALJ chose to credit (1) Dr. Cornejo's examination that found Plaintiff had a full (5/5) score on a pinch test analysis and (2) medical records from treating physicians indicating medication improved Plaintiff's neuropathy. [R. 48.] The ALJ—in choosing to ***discredit*** Plaintiff's specific testimony about his neuropathy—chose to credit his testimony about independent living, *i.e.*, he can "handle his own

personal care, prepare meals, help with parenting responsibilities, drive, and go shopping." [*Id.*] Crediting the objective pinch test score and prior medical records over Plaintiff's subjective testimony about his impairments, a reasonable person could find Plaintiff's numbness would not affect his ability to perform sedentary work.

Next, Plaintiff complains the ALJ did not account for his need for standing breaks or time off-task. [Docket No. 6 at 26.] Similarly, Plaintiff argues the ALJ did not account for his need for frequent bathroom breaks caused by his non-severe kidney disease. [*Id.* at 25.] But the ALJ's RFC analysis ***explicitly*** includes Plaintiff's need for breaks. [R. 44.] Although Plaintiff asked the vocational expert about time off task at the administrative hearing, none of the treating or examining medical sources opined Plaintiff would be off task during the workday or otherwise unable to remain on task for competitive employment. If that evidence is not before the ALJ, she cannot consider it.

Plaintiff's final argument is the ALJ did not properly conduct the SSA "Psychiatric Review Technique" ("PRT"). [Docket No. 6 at 27–28]. Although its name suggests otherwise, the PRT is not a specific form or test. *Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 268 (D.N.J. 2022). Instead, it simply refers to the ALJ's obligation to document "the relevant findings and conclusions" surrounding a plaintiff's claimed mental impairment. *Id.* (quoting *Perez v. Saul*, 2020 WL 1984901, at *2 (E.D. Pa. Apr. 27, 2020)). Those "findings and conclusions" are, broadly speaking: (1) the symptoms and laboratory findings regarding a "medically determinable mental impairment" that plaintiff suffers; and (2) the "degree of

limitation" or in other words, the impact a condition has on a plaintiff, rated on a scale from none to extreme. 20 C.F.R. § 404.1520a.

Here, the ALJ did both. The ALJ reviewed Plaintiff's treatment records, the progression of his symptoms, and their ultimate improvement such that Plaintiff suffered "no more than minimal limitations upon his ability to perform work-related activities." [R. 43.] As a result, the ALJ classified his mental impairments as "mild." [*Id.* at 44.] And she incorporated her analysis—performed when determining if Plaintiff's mental impairments are severe or non-severe—into the RFC analysis. [*Id.*] If the ALJ made any error at all in her PRT, it was referring to it as an RFC when incorporating the PRT into the step 7 RFC she later performed. [*Id.* ("Therefore, the following residual assessment reflects the degree of limitation the undersigned has found in the paragraph B mental function analysis.").]

And the ALJ's PRT analysis is supported by substantial evidence. Her conclusion is anchored to Plaintiff's treatment records demonstrating improvement on anti-depressant and anti-anxiety medication. [*Id.* at 43.] As mentioned, when assessing the ALJ's evaluation of Plaintiff's mental acuity under Listing 11.14, the ALJ explained Plaintiff's "mental status exam showed full affect, good insight and judgment, clear speech, and no cognitive impairment, with assessment of adjustment disorder." [*Id.*] That is substantial evidence from which a reasonable person—like the ALJ—could conclude Plaintiff's mental impairments were mild and did not affect his RFC.

[Docket No. 6]

## V. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the ALJ's decision. An accompanying Order shall issue.

**July 31, 2026**
Date

**/s/ Renée Marie Bumb**
Renée Marie Bumb
Chief United States District Judge